IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TREASA M. TURNBEAUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:22-CV-887 |
| | ) | |
| BOARD OF CERTIFIED SAFETY | ) | |
| PROFESSIONALS, TERESA A. COLE, | ) | |
| JOAQUIN M. DIAZ, V. RAYMOND | ) | |
| FERRARA, ASHOK GARLAPATI, | ) | |
| JAY R. HARF, JIM S. KREINBRINK, | ) | |
| BRUCE K. LYON, DANIEL T. LYONS, | ) | |
| REGINA MCMICHAEL, MICHAEL | ) | |
| H. OVERHOLT, C. CHRISTOPHER | ) | |
| PATTON, DONALD A. ROBINSON, | ) | |
| LESLIE D. STOCKEL, MARIO A. | ) | |
| VARELA, CHRISTY UDEN, | ) | |
| CHRISTINE T. McCONNELL, and | ) | |
| KELLI MINJAREZ, each individual | ) | |
| Defendant in both their Individual and | ) | |
| Official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY

Plaintiff Treasa M. Turnbeaugh, by counsel, for her Complaint for Damages and

Demand for Trial by Jury based on violations of the Americans with Disabilities Act of

1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008

("ADAAA") as well as breach of contract, violation of the Illinois Wage Payment and

Collection Act, breach of fiduciary duty, violation of the Computer Fraud and Abuse Act,

violation of the Federal Stored Communications Act, invasion of privacy, tortious

interference with business and contractual relationships, and respondeat superior, states as follows:

## I.     INTRODUCTION

1.      This is an action brought by Treasa M. Turnbeaugh, PhD, CSP, CAE, IOM, FASSP ("Dr. Turnbeaugh") against Defendant Board of Certified Safety Professionals ("BCSP"), between which parties there was an employment relationship. BCSP violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), during Dr. Turnbeaugh's employment with BCSP, by terminating her on the basis of her disability, bipolar disorder. BCSP and other Defendants also breached its contract with Dr. Turnbeaugh, violated the Illinois Wage Payment and Collection Act, breached its fiduciary duty to Dr. Turnbeaugh, violated the Computer Fraud and Abuse Act, violated of the Federal Stored Communications Act, invaded Dr. Turnbeaugh's privacy, committed tortious interference with business and contractual relationships, and brought rise to claims under the theory of respondeat superior

## II.     EEOC COMPLIANCE

2.      Dr. Turnbeaugh exhausted all of the administrative proceedings available to her by timely filing a Charge of Discrimination on the basis of disability with the U.S. Equal Employment Opportunity Commission ("EEOC").

3.      Dr. Turnbeaugh filed her Charge of Discrimination with the EEOC on or about December 31, 2020. A copy of Dr. Turnbeaugh's Charge is attached hereto and marked as Exhibit 1.

4.     Dr. Turnbeaugh' Charge was timely filed in compliance with 29 U.S.C. § 626, 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5.

5.     Dr. Turnbeaugh received a Dismissal and Notice of Rights on February 28, 2022, which was dated February 4, 2022. A true and accurate copy of the Dismissal and Notice of Rights is attached hereto and marked as Exhibit 2.

6.     This action was therefore timely filed within ninety (90) days of receipt by Dr. Turnbeaugh of the Dismissal and Notice of Rights.

### III.    <u>JURISDICTION</u>

7.     Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1367 as well as 42 U.S.C. § 12101, *et seq.*

8.     Jurisdiction to grant injunctive and declaratory equitable relief as well as to award damages is invoked pursuant to 42 U.S.C. § 12117.

9.     The ADA claims are authorized and instituted pursuant the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA").

10.     In addition, jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332, *et seq.*, conferring diversity jurisdiction.

11.     Dr. Turnbeaugh is a resident and citizen of the State of Missouri, and as shown below, each of the Defendants is a resident and citizen of a different state than Dr. Turnbeaugh.

12.     The amount in controversy in this matter exceeds $75,000.00, as Dr. Turnbeaugh's unpaid bonus and attorneys' fees alone exceed the jurisdictional threshold of $75,000.00.

13.     The state law claims are authorized and instituted pursuant to 28 U.S.C. § 1367.

14.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

## IV.     VENUE

15.     Dr. Turnbeaugh, at all times relevant to this Complaint, was a resident of Marion County in the State of Indiana and is a citizen of the United States of America.

16.     BCSP is a not-for-profit corporation with its principal office address located in Indianapolis, Indiana.

17.     The unlawful employment practices alleged herein primarily arose in Marion County, Indiana. Marion County is located in the Southern District of Indiana.

18.     Thus, this cause of action is properly venued in the Southern District of Indiana under 28 U.S.C. § 1391(b), which allows for an action to be brought in the district where the defendant resides or in which the cause of action arose.

## V.     PLAINTIFF

19.     Dr. Turnbeaugh is a citizen of the United States, and during all times relevant to this Complaint, a resident of Marion County in the State of Indiana.

20.     Dr. Turnbeaugh resided in Indianapolis, Indiana during all times relevant to this Complaint.

21.     Since at least the fall of 2020, Dr. Turnbeaugh has resided in and is a citizen of the State of Missouri.

22.     Dr. Turnbeaugh is diagnosed with the disability of bipolar disorder and has been since at least 2003.

23.     Dr. Turnbeaugh is a person entitled to protection under the ADA based on her disability.

## VI.     DEFENDANTS

24.     Defendant BCSP is a not-for-profit corporation with its principal office address located at 8645 Guion Road, Indianapolis, Indiana 46268.

25.     At most times relevant to this action, BCSP employed Dr. Turnbeaugh.

26.     Defendant Teresa A. Cole was at all times relevant to this action a member of the Board of Directors of BCSP and is a resident and citizen of the State of Pennsylvania.

27.     Defendant Joaquin M. Diaz was at all times relevant to this action a member of the Board of Directors of BCSP and is a resident and citizen of the State of Oregon.

28.     Defendant V. Raymond Ferrara was at all times relevant to this action a member of the Board of Directors of BCSP and is a resident and citizen of the State of Florida.

29.     Defendant Ashok Garlapati was at all times relevant to this action a member of the Board of Directors of BCSP and is a resident and citizen of the Country of Kuwait.

30.     Defendant Jay R. Harf was at all times relevant to this action a member of the Board of Directors of BCSP and a is resident and citizen of the State of Pennsylvania.

31.     Defendant Jim S. Kreinbrink was at all times relevant to this action a member of the Board of Directors of BCSP and is a resident and citizen of the State of Ohio.

32.     Defendant Bruce K Lyon was at all times relevant to this action a member of the Board of Directors of BCSP and is a resident and citizen of the State of Kansas.

33.     Defendant Daniel T. Lyons was at all times relevant to this action a member of the Board of Directors of BCSP and is a resident and citizen of the Country of Canada.

34.     Defendant Regina McMichael was at all times relevant to this action a member of the Board of Directors of BCSP and is a resident and citizen of the State of Georgia.

35.     Defendant Michael H. Overholt was at all times relevant to this action a member of the Board of Directors of BCSP and is a resident and citizen of the State of Texas.

36.     Defendant C. Christopher Patton was at all times relevant to this action a member of the Board of Directors of BCSP and is a resident and citizen of the State of Tennessee.

37.     Defendant Donald A. Robinson was at all times relevant to this action a member of the Board of Directors of BCSP and is a resident and citizen of the State of Massachusetts.

38.     Defendant Leslie D. Stockel was at all times relevant to this action a member of the Board of Directors of BCSP and is a resident and citizen of the State of Oklahoma.

39.     Defendant Mario A. Varela was at all times relevant to this action a member of the Board of Directors of BCSP and is a resident and citizen of the State of Ohio.

40.     Defendant Christy Uden was at all times relevant to this action and remains an employee of BCSP and is a resident and citizen of the State of Indiana.

41.     Defendant Christine T. McConnell was at all times relevant to this action and remains an employee of BCSP and is a resident and citizen of the State of Indiana.

42.     Defendant Kelli Minjarez was at all times relevant to this action and remains an employee of BCSP and is a resident and citizen of the State of Indiana.

## VII.   STATEMENT OF FACTS

**A.     BCSP hired Dr. Turnbeaugh in January 2011.**

43.     BCSP hired Dr. Turnbeaugh as the Director of Certification and Program Development on January 2, 2011.

44.     On September 9, 2012, Dr. Turnbeaugh was selected and ratified by the full Board of Directors to be promoted to Chief Executive Officer of BCSP.

45.     Dr. Turnbeaugh was highly successful throughout her time as CEO of BCSP.

46.     Dr. Turnbeaugh consistently met her yearly goals, earned bonuses for accomplishing these goals, brought in multi-millions of dollars to the organization, doubled the number of certificants, and started the BCSP Foundation.

**B.     After Dr. Turnbeaugh terminated Ms. Linda Martin, Ms. Martin complained about Dr. Turnbeaugh.**

47.     On May 9, 2020, Dr. Turnbeaugh terminated Ms. Linda Martin with the authorization and direction of the Board of Directors of BCSP.

48.     After Ms. Martin's termination, Ms. Martin complained that Dr. Turnbeaugh created a hostile work environment.

49.     On June 10, 2020, Dr. Turnbeaugh received a forwarded letter from an Indianapolis attorney to BCSP's attorney, wherein Dr. Turnbeaugh was accused of a hostile work environment and discrimination on the basis of sexual orientation and gender.

50.     This letter sought to expose Dr. Turnbeaugh's alleged personal life, medical information, and false accusations of Dr. Turnbeaugh's actions as CEO of BCSP.

51.     Dr. Turnbeaugh denied (and still denies) all allegations by Ms. Martin.

## C.     BCSP investigated Dr. Turnbeaugh.

52.     After Ms. Martin's allegations and the letter from an Indianapolis attorney were received, BCSP investigated Dr. Turnbeaugh by and through an attorney engaged by BCSP to investigate Dr. Turnbeaugh.

53.     During this investigation, BCSP asked individuals if they knew that Dr. Turnbeaugh was bipolar.

54.     During this investigation, BCSP advised the entire Board of Directors that Dr. Turnbeaugh was bipolar.

55.     Dr. Turnbeaugh's mental health was a central part of BCSP's investigation.

56.     Christy Uden and Christine T. McConnell schemed to cause the termination of Dr. Turnbeaugh's employment and provided private, personal, and irrelevant information to the attorney investigating Dr. Turnbeaugh on BCSP's behalf and others to put Dr. Turnbeaugh in a negative light.

**D.    BCSP terminated Dr. Turnbeaugh's employment.**

57.    On July 10, 2022, BCSP terminated Dr. Turnbeaugh's employment from her position of CEO.

58.    BCSP stated that it terminated Dr. Turnbeaugh's employment without cause.

59.    BCSP found that Dr. Turnbeaugh did not commit any wrongdoing in connection with the complaints made by Ms. Martin.

60.    BCSP threatened to reverse Dr. Turnbeaugh's termination to a "cause" termination if Dr. Turnbeaugh did not accept specific terms of a settlement offer made by BCSP.

**E.    BCSP breached its Employment Agreement with Dr. Turnbeaugh, at minimum, by not paying her the correct amount of her earned bonus after BCSP terminated her.**

61.    BCSP entered into an Employment Agreement with Dr. Turnbeaugh effective September 1, 2019. At the time of the termination of her employment, Dr. Turnbeaugh's Employment Agreement had term remaining of four years.

62.    The Employment Agreement reads in part as follows:

   a.  e) Severance Payments. If the Board terminates Employee's employment for any reason other than for Cause or as stated in subparagraph 4 below, then BCSP's sole liability shall be to provide to Employee a lump sum payment equivalent to twelve (12) months of Employee's Base Compensation (less deductions required by law), and any vested commissions, prorata bonuses and the monetary value of any unused PTO Employee had accrued as of the date of termination as well as all payments and benefits to Employee pursuant to Sections 3 and 4 above which have been earned but have not been provided through the date of termination.

63.    BCSP did not terminate Dr. Turnbeaugh for cause.

64.     BCSP did not pay Dr. Turnbeaugh the correct amount earned for her 2020 bonus.

65.     At the time of Dr. Turnbeaugh's termination without cause on July 10, 2020, Dr. Turnbeaugh had already completed 20 of the 21 goals for 2020 set for her by the Board of Directors.

66.     The remaining goal was impossible to complete due to COVID.

67.     Thus, Dr. Turnbeaugh had met all of her goals to receive her full 2020 bonus.

**F.     BCSP did not follow its own Bylaws when terminating Dr. Turnbeaugh.**

68.     The BCSP Bylaws outline a procedure for removal of a CEO.

69.     BCSP did not follow this procedure when terminating Dr. Turnbeaugh.

70.     Section 8, subsection B, of the BCSP Bylaws states:

a.   Should the Board of Directors for any reason seek the removal of the Chief Executive Officer, the Board of Directors will give the CEO reasonable opportunity to address the Board of Directors with full knowledge of the issue for removal. The Chief Executive Officer may be removed upon written notification from the President by affirmative vote of three-fourths (3/4) of the full Board of Directors. The Chief Executive Officer may resign upon providing written notice to the President, in accordance with any contractual requirements.

71.     Dr. Turnbeaugh never had the opportunity to address the Board of Directors and was not provided with any knowledge of any issue for her removal.

72.     Instead, prior to giving Dr. Turnbeaugh any opportunity to address the Board of Directors, BCSP sent out a press release and newsletter announcing a change in leadership resulting from Dr. Turnbeaugh's termination.

**G.    Employees of BCSP defamed and invaded the privacy of Dr. Turnbeaugh.**

73.    After Dr. Turnbeaugh's employment was terminated, BCSP employees, including Kelli Minjarez, Christine T. McConnell, and Christy Uden (either by them or at their direction), tampered with Dr. Turnbeaugh's social media and work-related accounts without Dr. Turnbeaugh's authorization.

74.    Specifically, after Dr. Turnbeaugh's employment was terminated, BCSP employees, including Kelli Minjarez, Christine T. McConnell, and Christy Uden (either by them or at their direction), tampered with Dr. Turnbeaugh's Facebook, LinkedIn, AppleID, email password, personal Microsoft 360 accounts and data, and Dropbox information without Dr. Turnbeaugh's authorization.

75.    After Dr. Turnbeaugh's employment was terminated, BCSP employees, including Kelli Minjarez, Christine T. McConnell, and Christy Uden (either by them or at their direction), tampered with the above reference accounts' passwords, deleted stored data, deleted emails, deleted recovery phone numbers and email addresses without Dr. Turnbeaugh's authorization.

76.    After Dr. Turnbeaugh's employment was terminated, BCSP employees posted on social media accounts defaming Dr. Turnbeaugh and her professional reputation.

77.    Specifically, BCSP employees posted and shared images on LinkedIn that were negative and implied that Dr. Turnbeaugh, as CEO of BSCP, was a bad leader and did not care about BCSP employees.

78.    Some of the statements posted by BCSP employees include, but are not limited to, the following:

a. "You don't inspire your teammates by showing them how amazing you are. You inspire them by showing them how amazing they are."

b. "Never push a loyal person to the point where they no longer care."

c. "The true price of leadership is the willingness to place the needs of others above your own. Great leaders truly care about those they are privileged to lead and understand that the true cost of leadership privilege comes at the expense of self-interest."

d. "The strongest people are not those who show strength in front of us, but those who win battles we know nothing about."

79. As a direct and proximate result of the foregoing conduct:

a. Dr. Turnbeaugh incurred and continues to incur a substantial loss of past, present and future income;

b. Dr. Turnbeaugh has lost the fringe benefits provided by BCSP;

c. Dr. Turnbeaugh has suffered damages to her career;

d. Dr. Turnbeaugh has suffered damages to her professional reputation;

e. Dr. Turnbeaugh has suffered mental and physical anguish; and

f. Dr. Turnbeaugh has incurred additional financial losses, including the costs associated with invoking her federally protected civil rights and all other claims herein.

## VIII.   <u>STATEMENT OF CLAIMS</u>

### <u>COUNT I</u>
*(Discrimination under the Americans with Disabilities Act,*
*42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008.)*

80. Dr. Turnbeaugh incorporates the allegations in paragraphs 1 through 79 above, and, in addition, alleges that BCSP discriminated against her on the basis of her

disability, her record of disability, and/or being regarded as having a disability in violation of the ADA.

81.     BCSP is engaged in an industry affecting commerce.

82.     BCSP has employed fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding year.

83.     BCSP satisfies the definition of "employer" within the meaning of Section 101 of the ADA, 42 U.S.C. § 12111(5)(a).

84.     Dr. Turnbeaugh at all times relevant herein had the requisite skill, experience, education and other job-related requirements of the position she held with BSCP.

85.     Consequently, Dr. Turnbeaugh is a qualified individual with a disability under 42 U.S.C. § 12111(8).

86.     Dr. Turnbeaugh is disabled within the meaning of the ADA; that is, she has a mental impairment, has record of, and/or is regarded as having a mental impairment that substantially limits a major life activity, including but not limited to, eating, sleeping, concentrating, thinking, and working. Specifically, Dr. Turnbeaugh has bipolar disorder.

87.     BCSP's investigation of Dr. Turnbeaugh in 2020 centered on Dr. Turnbeaugh's bipolar diagnosis.

88.     Shortly after investigating Dr. Turnbeaugh because of her bipolar disorder, BCSP terminated Dr. Turnbeaugh's employment despite her superior performance.

89.     Dr. Turnbeaugh's disability was a motivating factor in BCSP's decision to terminate Dr. Turnbeaugh's employment.

90.     Other employees without disabilities were treated more favorably than Dr. Turnbeaugh.

## COUNT II
*(Breach of Contract)*

91.     Plaintiff incorporates the allegations in paragraphs 1 through 90 above, and, in addition, alleges that BCSP breached its Employment Agreement with Dr. Turnbeaugh when it terminated her employment.

92.     A contract for employment existed between Dr. Turnbeaugh and BCSP.[1] At the time of the termination of her employment, Dr. Turnbeaugh had a term of four years remaining.

93.     A material term existed in the contract for payment of bonuses when and if Dr. Turnbeaugh was terminated without cause.

94.     BCSP failed to pay Dr. Turnbeaugh the full amount of her earned 2020 bonus after terminating Dr. Turnbeaugh's employment without cause.

95.     At the time of Dr. Turnbeaugh's termination without cause on July 10, 2020, Dr. Turnbeaugh had already completed 20 of the 21 goals for 2020 set for her by the Board of Directors.

96.     The remaining goal was impossible to complete due to COVID.

97.     Thus, Dr. Turnbeaugh had met all of her goals to receive her full 2020 bonus.

---

[1]  A true and accurate copy of the Employment Agreement between Dr. Turnbeaugh and BCSP is attached hereto as Exhibit 3.

98.     BCSP breached the Employment Agreement by not paying Dr. Turnbeaugh her bonus and by improperly terminating the Employment Agreement before the end of its term.

99.     Dr. Turnbeaugh suffered damages because of these breaches.

### COUNT III
*(Violation of Illinois Wage Payment and Collection Act, 820 ILCS 115 et. seq.)*

100.     Plaintiff incorporates the allegations in paragraphs 1 through 99 above, and, in addition, alleges that BCSP violated the Illinois Wage Payment and Collection Act.

101.     The Employment Agreement between BCSP and Dr. Turnbeaugh is governed by Illinois law.

102.     Under Illinois law, Dr. Turnbeaugh's earned bonus is considered a wage.

103.     Dr. Turnbeaugh has a right under the Employment Agreement to collect her earned bonuses.

104.     At the time of Dr. Turnbeaugh's termination without cause on July 10, 2020, Dr. Turnbeaugh had already completed 20 of the 21 goals for 2020 set for her by the Board of Directors.

105.     The remaining goal was impossible to complete due to COVID.

106.     Thus, Dr. Turnbeaugh had met all of her goals to receive her full 2020 bonus.

107.     BCSP's failure to pay Dr. Turnbeaugh her earned 2020 bonus entitles her to additional damages of 2% of the underpayment for each month of the underpayment.

108.     By failing to pay Dr. Turnbeaugh her earned 2020 bonus, BCSP violated the Illinois Wage Payment and Collection Act.

## COUNT IV
*(Breach of Fiduciary Duty)*

109.    Plaintiff incorporates the allegations in paragraphs 1 through 108 above, and, in addition, alleges that BCSP's and each Board members' omissions in this matter give rise to a claim for breach of fiduciary duty.

110.    Each member of the Board of Directors of BCSP, specifically Teresa A. Cole, Joaquin Diaz, V. Raymond Ferrara, Ashok Garlapati, Jay Harf, Jim Kreinbrink, Bruce Lyon, Daniel Lyons, Regina McMichael, Michael Overholt, Christopher Patton, Donald A. Robinson, Leslie D. Stockel, and Mario Varela, and BCSP owed a fiduciary duty to Dr. Turnbeaugh in relation to her employment with BCSP.

111.    Specifically, Section 8, subsection B, of the BCSP Bylaws[2] states:

   a.   Should the Board of Directors for any reason seek the removal of the Chief Executive Officer, the Board of Directors will give the CEO reasonable opportunity to address the Board of Directors with full knowledge of the issue for removal. The Chief Executive Officer may be removed upon written notification from the President by affirmative vote of three-fourths (3/4) of the full Board of Directors. The Chief Executive Officer may resign upon providing written notice to the President, in accordance with any contractual requirements.

112.    Each member of the Board of Directors of BCSP, specifically Teresa A. Cole, Joaquin Diaz, V. Raymond Ferrara, Ashok Garlapati, Jay Harf, Jim Kreinbrink, Bruce Lyon, Daniel Lyons, Regina McMichael, Michael Overholt, Christopher Patton, Donald A. Robinson, Leslie D. Stockel, and Mario Varela, and BCSP breached their fiduciary duty to Dr. Turnbeaugh when BCSP terminated Dr. Turnbeaugh's employment in violation of its own Bylaws governing the procedure for removal of a CEO.

---

[2] A true and accurate copy of the BCSP Bylaws is attached hereto as Exhibit 4.

113.    Dr. Turnbeaugh has been damaged by each member of the Board of Directors of BCSP, specifically Teresa A. Cole, Joaquin Diaz, V. Raymond Ferrara, Ashok Garlapati, Jay Harf, Jim Kreinbrink, Bruce Lyon, Daniel Lyons, Regina McMichael, Michael Overholt, Christopher Patton, Donald A. Robinson, Leslie D. Stockel, and Mario Varela, and BCSP's breaches of their fiduciary duty.

## COUNT V
*(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030)*

114.    Plaintiff incorporates the allegations in paragraphs 1 through 113 above, and, in addition, alleges that BCSP employees, including Kelli Minjarez, Christine T. McConnell, and Christy Uden (either by them or at their direction), violated the Computer Fraud and Abuse Act.

115.    After the termination of Dr. Turnbeaugh's employment, BCSP employees, including Kelli Minjarez, Christine T. McConnell, and Christy Uden (either by them or at their direction), tampered with Dr. Turnbeaugh's Facebook, LinkedIn, AppleID, email password, personal Microsoft 360 accounts and data, and Dropbox information without Dr. Turnbeaugh's authorization.

116.    After the termination of Dr. Turnbeaugh's employment, BCSP employees, including Kelli Minjarez, Christine T. McConnell, and Christy Uden (either by them or at their direction), tampered with the above reference accounts' passwords, deleted stored data, deleted emails, deleted recovery phone numbers and email addresses without Dr. Turnbeaugh's authorization.

117.    An individual who "intentionally accesses a computer without authorization or exceeds authorized access and thereby obtains…information from any protected computer" violates the Computer Fraud and Abuse Act ("CFAA").

118.    By their actions in relation to Dr. Turnbeaugh's protected information and accounts after the termination of Dr. Turnbeaugh's employment and without her authorization, BCSP employees, including Kelli Minjarez, Christine T. McConnell, and Christy Uden (either by them or at their direction), violated the CFAA.

119.    Dr. Turnbeaugh has been damaged by these violations of the CFAA.

## COUNT VI
*(Violation of the Federal Stored Communications Act, 18 U.S.C. § 2701)*

120.    Plaintiff incorporates the allegations in paragraphs 1 through 119 above, and, in addition, alleges that BCSP employees, including Kelli Minjarez, violated the Federal Stored Communications Act ("FSCA").

121.    After the termination of Dr. Turnbeaugh's employment, BCSP employees, including Kelli Minjarez, Christine T. McConnell, and Christy Uden (either by them or at their direction), tampered with Dr. Turnbeaugh's Facebook, LinkedIn, AppleID, email password, personal Microsoft 360 accounts and data, and Dropbox information without Dr. Turnbeaugh's authorization.

122.    After the termination of Dr. Turnbeaugh's employment, BCSP employees, including Kelli Minjarez, Christine T. McConnell, and Christy Uden (either by them or at their direction), tampered with the above reference accounts' passwords, deleted stored data, deleted emails, deleted recovery phone numbers and email addresses without Dr. Turnbeaugh's authorization.

123.   "[W]hoever (1) intentionally accesses without authorization a facility through which an electronic communication is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system" has violated the Federal Stored Communications Act.

124.   By their actions in relation to Dr. Turnbeaugh's protected information and accounts after the termination of Dr. Turnbeaugh's employment and without Dr. Turnbeaugh's authorization, BCSP employees, including Kelli Minjarez, Christine T. McConnell, and Christy Uden (either by them or at their direction), violated the FSCA.

125.   Dr. Turnbeaugh has been damaged by these violations of the FSCA.

## COUNT VII
### (*Invasion of Privacy – False Light*)

126.   Plaintiff incorporates the allegations of paragraphs 1 through 125 above, and, in addition, states that Defendants' conduct in this matter constitutes invasion of privacy under the sub-tort of false light.

127.   Defendants gave publicity to matters concerning Dr. Turnbeaugh that placed her before the public eye.

128.   This publicity placed Dr. Turnbeaugh in a false light which would be highly offensive to a reasonable person.

129.   Defendants had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Dr. Turnbeaugh would be placed.

## COUNT VIII
*(Tortious Interference with Contractual and/or Business Relationships)*

130.    Dr. Turnbeaugh incorporates the allegations of paragraphs 1 through 129 above and, in addition, states that the conduct of Christy Uden and Christine T. McConnell, if acting outside the scope of their employment, intentionally interfered with Dr. Turnbeaugh's contractual and/or business relationships with BCSP and/or other third parties.

131.    Ms. Uden and Ms. McConnell were aware of Dr. Turnbeaugh's contractual relationship with BCSP and her business relationships with other third parties, including members of BCSP.

132.    Ms. Uden and Ms. McConnell schemed to cause the termination of Dr. Turnbeaugh's employment and provided private, personal, and irrelevant information to the attorney investigating Dr. Turnbeaugh on BCSP's behalf and others to put Dr. Turnbeaugh in a negative light.

133.    Ms. Uden's and Ms. McConnell's statements contributed led to the termination of Dr. Turnbeaugh's employment with BCSP and caused or induced breaches of Dr. Turnbeaugh's contractual and/or business relationships with BCSP and/or other third parties.

134.    Contributing to the termination of employment of Dr. Turnbeaugh with biased opinions and grossly incomplete, personal, irrelevant and misleading documentation and statements does not constitute a legitimate business purpose.

135.    As a result of Christy Uden's and Christine T. McConnell's wrongful and tortious interference with Dr. Turnbeaugh's contractual and/or business relationship with BCSP and/or other third parties, Dr. Turnbeaugh has suffered damages.

**COUNT IX**
*(Respondeat Superior)*

136.    Dr. Turnbeaugh incorporates the allegations of paragraphs 1 through 135 above, and, in addition, states that BCSP is liable for the conduct of its employees and agents under the theory of respondeat superior.

137.    The members of the Board of Directors of BCSP were acting within the scope of their agency when they violated their fiduciary duties to Dr. Turnbeaugh.

138.    Defendants Kelli Minjariz, Christine T. McConnell, and Christy Uden (either by them or at their direction), acted within the scope of their employment when they violated the Federal Stored Communications Act and the Computer Fraud and Abuse Act.

139.    The injurious acts of the members of the Board of Directors, Ms. Minjarez, Christine T. McConnell, and Christy Uden (either by them or at their direction), were made in an attempt to further BCSP's business.

140.    As a result of Defendants' wrongful acts completed within the scope of their employment, Dr. Turnbeaugh has suffered damages.

**IX.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Dr. Treasa M. Turnbeaugh, prays for a judgment in her favor against Defendants, and prays that the following relief be awarded:

(a)    Grant a permanent injunction enjoining BCSP, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination and any other employment practice, which discriminates on the basis of disability.

(b)    Order BCSP to institute and carry out policies, practices and programs which provide equal employment opportunities for individuals based on their disability, and which eradicate the effects of its past and present unlawful employment practices.

(c)     Order BCSP to make whole Dr. Turnbeaugh by providing appropriate back pay and front pay for actual damages with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to Dr. Turnbeaugh's pecuniary losses.

(d)     Order BCSP to make whole Dr. Turnbeaugh by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including medical expenses, in amounts to be determined at trial.

(e)     Order BCSP to make whole Dr. Turnbeaugh by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

(f)     Order Defendants to pay Dr. Turnbeaugh punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial.

(g)     Order BCSP to reinstate Dr. Turnbeaugh to an appropriate position, at an equal or improved salary.

(h)     Order Defendants to pay Dr. Turnbeaugh special damages, in amounts to be determined at trial.

(i)     Order Defendants to pay damages to Dr. Turnbeaugh for any and all injuries to her career, in amounts to be determined at trial.

(j)     Award Dr. Turnbeaugh the costs of this action including reasonable attorneys' fees and any such further relief as the Court may deem just, proper, and equitable.

(k)     Award Dr. Turnbeaugh any damages she is entitled to receive for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA").

(l)     Award Dr. Turnbeaugh any damages, including reasonable attorneys' fees, costs, pre- and post-judgment interest, she is entitled to receive under any claim she has alleged herein, including breach of contract, violation of the Illinois Wage Payment and Collection Act, breach of fiduciary duty, violation of the Computer Fraud and Abuse Act, violation of the Federal Stored

Communications Act, invasion of Dr. Turnbeaugh's privacy, tortious interference with business and/or contractual relationships, and any claims that give rise to liability under the theory of respondeat superior.

(m)     Grant such further relief as the Court deems necessary and proper in the public interest.

## X.     RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of federal and state law.

## XI.     JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,


*s/ Sandra L. Blevins*
Sandra L. Blevins, Attorney No. 19646-49
Jamie A. Maddox, Attorney No. 26522-49
Chad H. Holler, Attorney No. 35253-49


*Attorneys for Plaintiff Treasa M. Turnbeaugh*

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail: litigation@betzadvocates.com

23